**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 03-2223**

———————

RICHARD L. FULMER; JAMES M. BEANE; BRENT A.
CLEVINGER; DAVID L. FULKS; BRIAN N. SHARP;
JAMES A. HILL; SCOTT D. DAVIDSON; JOHN O.
PHILPOTT; DANIEL J. TAAFFE; BOYD R. POFF, III;
DWIGHT PETTRY; KENNY R. ROMINE; JEREMY
RONCAGLIONE; REX EGGLETON; BOYD R. POFF, II;
ERIC MITCHELL; LANCE W. CARNEY; CHARLES E.
SMITH, and other employees similarly situated,

                                    Plaintiffs - Appellants,


        and

JERRY D. BOSTIC,

                                    Plaintiff,


        versus

THE CITY OF ST. ALBANS, WEST VIRGINIA, a West
Virginia Municipal Corporation,

                                    Defendant - Appellee.

———————

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph Robert Goodwin,
District Judge.  (CA-02-1053-2)

———————

Argued:  October 27, 2004        Decided:  January 7, 2005

———————

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge, and Glen E.
CONRAD, United States District Judge for the Western District of
Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion. Chief Judge Wilkins wrote an opinion concurring in part and dissenting in part.

---

**ARGUED:** Scott Allen Damron, Huntington, West Virginia, for Appellants. Bryan Rex Cokeley, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellee. **ON BRIEF:** Robert L. Bailey, II, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This appeal arises out of a claim for unpaid overtime compensation brought by nineteen professional firefighters employed by the City of St. Albans, West Virginia (the City). The firefighters allege that the City's method of calculating their regular rate of pay violates the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-219 (1998). The district court, concluding that the City's method of compensation complies with the FLSA, entered an order granting summary judgment to the City. We affirm the judgment of the district court.

I.

The parties' stipulated facts indicate that the City's firefighters are scheduled to work one twenty-four hour shift followed by forty-eight hours off. During a three week cycle, each firefighter works two forty-eight hour weeks and one seventy-two hour week. The firefighters are scheduled to work an average of 2,912 hours per year. This total includes 2,080 scheduled straight time hours, or hours within a forty hour workweek, and 832 scheduled overtime hours.

The City pays the firefighters a regular hourly rate for all hours worked up to and including forty hours per week. The firefighters are paid an overtime rate of one and one-half times their regular hourly rate for all hours worked in excess of forty

3

per week.  The City's wage classification plan expresses the firefighters' base pay as a total annual salary.  In order to calculate the firefighters' regular hourly rate, the City divides the firefighters' annual salary by 3,328 hours.  This divisor equals the number of hours for which the firefighters are scheduled to be paid.  Since the firefighters are scheduled to work 832 overtime hours, and since they are compensated at a rate of one and one-half times their regular rate for these hours, the City adds 1,248 hours (832 hours multiplied by 1.5) to the firefighters' 2,080 scheduled straight time hours to arrive at 3,328 hours.

The City's method of calculating the firefighters' regular hourly rate has been in practice since 1989.  When the City interviews individuals for the firefighter positions, the City explains that the firefighters work rotating shifts, consisting of one twenty-four hour shift followed by forty-eight hours off.  The City also explains the firefighters' total annual pay.

In July 2002, the firefighters filed a complaint against the City in West Virginia state court, alleging violations of the FLSA. The case was timely removed to the United States District Court for the Southern District of West Virginia.  The firefighters' second amended complaint alleges that the City fails to properly compensate the firefighters for overtime work.  The firefighters claim that the regular hourly rate, on which their overtime rate is based, is incorrectly calculated by the City.  The district court

4

granted summary judgment in favor of the City. The district court concluded that the firefighters' annual pay includes an overtime premium, and that the City properly deducts the overtime premium when calculating the firefighters' regular hourly rate. The firefighters appeal the district court's decision.

We review a grant of summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmoving party. Love-Lane v. Martin, 355 F.3d 766, 775 (4th Cir. 2004). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

II.

The overtime provision of the FLSA requires employers to pay nonexempt employees at least one and one-half times their "regular rate" for all hours worked in excess of forty per week. 29 U.S.C.A. § 207(a)(1) (1998). The "regular rate" refers to the hourly rate an employer pays an employee "for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945). In this case, it is undisputed that the City pays the firefighters overtime wages when the firefighters work more than forty hours in one week. The firefighters argue, however, that the City's formula for determining their regular hourly rate fails to comply with the

5

FLSA regulations. The firefighters contend that when calculating their regular hourly rate, the City must reduce their annual salary to its workweek equivalent and divide the workweek equivalent by the actual number of hours worked. See 29 C.F.R. §§ 778.109 and 778.113(b).

Although the regulations cited by the firefighters give some direction for calculating the regular hourly rate for an employee who is paid an annual salary, the regulations do not address the situation of an employee whose salary already includes a premium for overtime work. When an employee is hired on a salary basis, "the regular rate depends in part on the agreement of the parties as to what the salary is intended to compensate." 29 C.F.R. § 778.323. "[I]f the annual salary was properly intended by the parties to account for both a regular rate and an overtime rate, the contemplated arrangement is in compliance with the FLSA." Adams v. Dept. of Juvenile Justice, 143 F.3d 61, 68 (2nd Cir. 1998).

We agree with the district court that the parties agreed to include an overtime premium in the firefighters' annual pay. It is undisputed that the City explains the total annual pay to the firefighters when they are first interviewed. The City also explains the firefighters' rotating shifts. The City's method of calculating the firefighters' regular hourly rate has been in practice since 1989, and the firefighters did not formally petition

6

the City to change its method prior to filing this lawsuit. There is simply no evidence to support the firefighters' contention that they did not agree for their annual pay to include an overtime premium. The firefighters place great emphasis on the deposition testimony of a City Council member, who testified that firefighters complained in the past about their overtime pay. While this testimony may suggest that the firefighters became unsatisfied with their wages, it does not contradict the conclusion that the firefighters' agreed to their annual pay, and the included overtime premium, at the time they were hired.

We also agree with the district court that the City's method of calculating the firefighters' regular hourly rate complies with the FLSA. Since the firefighters' annual pay includes an overtime premium, the City properly deducts the overtime premium when calculating the firefighters' regular hourly rate. As previously stated, an employee's regular hourly rate is the rate an employer pays for the normal, non-overtime work period. Walling, 325 U.S. at 424 (emphasis added). See also 29 U.S.C. § 207(e) (1998) (providing for the exclusion of any overtime premium when calculating the regular rate); Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 464 (1948) (noting that Congress clearly "intended to exclude overtime premium payments from the computation of the regular rate of pay."). If the City did not convert the firefighters' scheduled overtime hours into straight-time hours

7

before calculating their regular rate, the firefighters' regular rate would be inflated. "To permit overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium -- a pyramiding that Congress could not have intended." Bay Ridge Operating Co., 334 U.S. at 464.

## III.

Because the undisputed facts with regard to the firefighters' claims for unpaid overtime compensation demonstrate that the City is entitled to judgment as a matter of law, the district court's entry of summary judgment in favor of the City is

AFFIRMED.

8

WILKINS, Chief Judge, concurring in part and dissenting in part:

The majority opinion affirms the grant of summary judgment against each of the Appellants. Although I concur in that result with regard to all but two of the Appellants, I respectfully dissent from the holding that the City was entitled to summary judgment against Lance W. Carney and Charles E. Smith.

We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Appellants. See Figgie Int'l, Inc. v. Destileria Serralles, Inc., 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When employees are hired at a particular salary for hours that the parties contemplate will exceed 40 per week, the FLSA entitles the employees to a statutory overtime premium for each hour that they work in excess of 40 in a given week, in addition to the salary to which they agreed. See 29 C.F.R. § 778.325 (2004).[1] The majority holds, however, that the City properly paid Appellants

---

[1]Section 778.325 explains, for example, that when an employee whose maximum hours standard is 40 (such as Appellants) is hired at a salary of $275 per week for 55 hours, he is entitled to receive the $275 for a 55-hour workweek plus a statutory overtime premium for each of the 15 hours he worked in excess of 40.

9

only their agreed-upon salary because, as a matter of law, the parties agreed when Appellants were hired that the salary already included the statutory overtime premiums. See ante, at 6-7; 29 U.S.C.A. § 207(e)(5) (West 1998 & Supp. 2004) (providing that an employee's regular rate shall not include compensation provided at a premium rate for overtime hours).

This holding is not supported by the record. The parties stipulated that "[t]he City's Wage Classification Plan specifies a firefighter's base pay as a total annual, rather than hourly, pay based on the firefighter's rank." J.A. 93. They also stipulated that "[w]hen the City first interviews a firefighter before hiring, the City explains to that firefighter the nature of the rotating 24-hour-on / 48-hour-off shifts" and that "[w]hen the City first hires a firefighter, the City explains to that firefighter his or her total annual pay." Id. at 94. No other stipulations or evidence forecasted in the record indicates what Appellants and City representatives discussed when Appellants were hired.

The majority apparently interprets the stipulation that the City explained to the firefighters their "total annual pay" to mean that the City specifically explained that Appellants' salary represented the total amount of compensation--including statutory overtime premiums--that they would receive for working the agreed-upon hours. But that is an erroneous interpretation, in my view. In the parties' stipulations, the term "total annual [pay]" is

10

contrasted with "hourly [pay]" simply to explain that the City's Wage Classification Plan sets forth Appellants' salaries in annual rather than hourly terms. Id. at 93. Thus, the stipulation that the City explains a firefighter's "total annual pay" to him at the time of his hiring cannot establish as a matter of law anything more than that the City explains a firefighter's base annual salary to him. See Rice v. Paladin Enters., 128 F.3d 233, 253 (4th Cir. 1997) (holding that, on review of grant of summary judgment to defendant, stipulation must be interpreted in the light most favorable to plaintiff). The stipulation states nothing about whether the City informed Appellants that their base salary already included statutory overtime premiums.[2]

The City contends that even if Appellants did not agree at the time they were hired that their annual salary already included statutory overtime premiums, it established as a matter of law that Appellants subsequently agreed to that arrangement. The City argues that the paychecks of each Appellant clearly explained that

---

[2]It also appears that the majority may place the burden on Appellants to prove the nonexistence of such agreements. See ante, at 6-7 ("There is simply no evidence to support the firefighters' contention that they did not agree for their annual pay to include an overtime premium."). But, in fact, the City bears the burden of proving the existence of the agreements because the City is attempting to use the agreements to justify its exclusion of a portion of Appellants' wages in determining Appellants' regular rates. See 29 U.S.C.A. § 207(e)(5); cf. Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986) (holding that employer bears the burden of proving applicability of FLSA exemptions). The City correctly conceded as much at oral argument.

his agreed-upon salary already included a statutory overtime premium and thus, by continuing to work without filing a formal complaint, Appellants implicitly agreed with the City's determination of their regular rate.

I agree with the City with regard to most of the Appellants. See Bodie v. City of Columbia, 934 F.2d 561, 564 (4th Cir. 1991) (en banc) (quoting with approval statement in Shepler v. Crucible Fuel Co., 140 F.2d 371, 374 (3d Cir. 1944), that "continuance in an employment under a new method of computing pay creates a new contract and that the employee's consent to the new arrangement may be found from the continuance" (internal quotation marks omitted)); id. at 566 (citing with approval General Electric Co. v. Porter, 208 F.2d 805, 813 (9th Cir. 1953), which held that employees, by continuing to work, implicitly agreed to employer's unilateral change in method of payment that resulted in employees no longer receiving overtime). But see Mumbower v. Callicott, 526 F.2d 1183, 1187 (8th Cir. 1975) (holding that an agreed-upon salary for agreed-upon hours does not include a statutory overtime premium unless the employer proves that the parties explicitly agreed that it would); Brennan v. Elmer's Disposal Serv., 510 F.2d 84, 86 n.1, 88 (9th Cir. 1975) (same). The record here demonstrates that most of the Appellants claim that their FLSA rights had been violated for at least three years, see Rule 26(a)(1) Disclosures of Pls., Richard L. Fulmer, et al., at 2-6 (filed Dec. 2, 2002), a

12

sufficient time to establish as a matter of law their awareness of the City's regular rate computation and their implied consent to that calculation.

Appellants argue, however, that there is no basis to impute knowledge of, and agreement to, the City's payment methods to all Appellants. Indeed, I can find no evidence in the record regarding how long Carney and Smith worked for the City prior to joining this lawsuit. As far as the record reflects, these employees may have promptly joined in this suit shortly after beginning work with the City. Considering that each of the Appellants bargained separately with the City and was not part of a collective bargaining unit, I would hold that the City failed to prove as a matter of law that Carney and Smith agreed--implicitly or otherwise--that their base salary already included statutory overtime premiums. I therefore respectfully dissent from the majority opinion to the extent that it holds to the contrary.